UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

REBECCA SHIMEL,

                Petitioner,                      Case No. 14-cv-14882

v                                          Honorable Thomas L. Ludington

MILLICENT WARREN,

                Respondent.

_____/

**OPINION AND ORDER GRANTING PETITIONER'S MOTION TO AMEND THE
MEMORANDUM IN SUPPORT OF HER PETITION FOR HABEAS CORPUS,
DENYING PETITIONER'S PETITION FOR HABEAS CORPUS, AND GRANTING A
CERTIFICATE OF APPEALABILITY**

      Petitioner, Rebecca Shimel, confined at the Huron Valley Women's Correctional Facility in Ypsilanti, Michigan, filed an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, through her attorneys James S. Brady and Alison L. Carruthers. Petitioner was convicted on her plea of guilty in the Bay County Circuit Court of second-degree murder, Mich. Comp Laws § 750.317; and possession of a firearm in the commission of a felony [felony-firearm], Mich. Comp Laws § 750.227(b). She was sentenced to eighteen to thirty six years in prison on the second-degree murder conviction and two years in prison on the felony-firearm conviction. Petitioner now contends that her trial counsel was ineffective for failing to spend sufficient time consulting with her and for advising her to plead guilty to second-degree murder rather than taking the case to trial and presenting a Battered Spouse Syndrome defense. Respondent has filed an answer to the petition, asserting that the claims lack merit. The Court agrees that Petitioner's claims are without merit, and therefore her petition will be denied.

**I.**

## A.

Because here the Michigan Court of Appeals overturned the initial findings of fact made by the Trial Court, this Court first must address the issue of which state court findings of fact it must defer to.  Pursuant to 28 U.S.C. § 2254(e)(1) the findings of fact made by a state court are presumed correct unless the petitioner shows by clear and convincing evidence that the factual findings were erroneous. *Id.* "This presumption of correctness also applies to the factual findings of a state appellate court based on the state trial record." *Sumner v. Mata,* 449 U.S. 539, 546-47, (1981). *See also Brumley v. Wingard*, 269 F.3d 629, 637 (6th Cir. 2001).

At a *Ginther* hearing on August 22, 2012, the State Trial Court agreed with Petitioner that her counsel had been deficient. *People v. Shimel*, No. 312375, 2013 WL 4006549 *5-6 (Mich. Ct. App. Aug. 6, 2013); *See also People v. Ginther*, 212 N.W.2d 922, 024-25 (Mich., 1973). Specifically, the trial judge found that Attorney Denton was ineffective for failing to adequately investigate a battered spouse defense and for failing to sufficiently meet with Petitioner for a sufficient amount of time. *Shimel*, WL 4006549, at *9, 12.  For these reasons, the State Trial Court allowed Petitioner to withdraw her guilty plea *Id*. at *5.

On August 6, 2013, the Michigan Court of Appeals overturned the decision of the Trial Court. The Court of Appeals held that the trial court committed clear error in its factual determination that Petitioner's counsel had not properly investigated a potential battered women's defense.  The Court of Appeals also held that the trial court erred as a matter of law in failing to apply the prejudice prong of the *Strickland* test, since Petitioner could not prove that she would have received a better outcome had she gone to trial. *Id*. at *9,12.  The Court of Appeals also concluded that the trial Court erred as a matter of law in determining that Attorney Denton was ineffective for failing to sufficiently meet with Petitioner, since again Petitioner

could not show prejudice under the second prong of *Strickland*.  Petitioner appealed the appellate decision to the Michigan Supreme Court, which denied her leave to appeal.

The question for this Court is thus whether it should defer to the state Trial Court's findings of fact, or whether it should defer to the state Appellate Court's findings of fact. This Court will defer to the factual findings of the state appellate court for two reasons.  First, the state appellate court overturned the decision of the trial court under a deferential, "clear error" review. *Id.* at *8-9 (finding that the trial court clearly erred in its factual finding that Attorney Denton failed to investigate a battered spouse self-defense theory and "improperly substituted its judgment for that of trial counsel on a matter of trial strategy.")   Second, Petitioner now challenges the state appellate court's findings of fact, not the state trial court's findings of fact.[1]

## B.

Accordingly, this Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

> Defendant was charged with open murder, MCL 750.316, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b, in the shooting death of her husband, Rodney Shimel.  Defendant fired seven shots, reloaded the gun, and continued to fire.  Shimel sustained nine gunshot wounds, seven of which entered his body through his back.  Defendant was arrested on the same day that the shooting occurred.
>
> Defendant was represented by four different attorneys, two court-appointed and two retained, before she entered her guilty plea.  The court-appointed attorneys represented defendant only briefly.  Before defendant's preliminary examination, while she was represented by her first retained attorney, the assistant prosecutor, J. Dee Brooks, offered to allow defendant to plead guilty to second-degree murder and felony-firearm with no sentence recommendation in exchange for the dismissal of the open murder charge.  The offer remained open until the day before the preliminary examination.  Although defendant decided to accept the plea offer, Brooks withdrew it because defendant's attorney did not inform him that defendant wanted to accept it until the morning of the preliminary

---

[1] This question is dicta on the facts of this case.  Even if this Court deferred to the state Trial Court's factual findings that Attorney Denton was ineffective as a matter of fact, this Court would still find against Petitioner as a matter of law because the Trial Court failed to conduct a prejudice inquiry as required by *Strickland*.

examination. Thus, because the plea offer was not accepted before Brooks's deadline, the offer was withdrawn. Following the preliminary examination, defendant was bound over for trial.

Thereafter, the trial court granted defense counsel's motion to withdraw, and defendant retained attorney E. Brady Denton to represent her. On October 5, 2010, the trial court entered a stipulation to adjourn trial that indicated that Denton was investigating a "battered spouse" defense and intended to hire an expert to interview defendant. Denton spoke several times with attorney Dale Grayson at the National Clearinghouse for the Defense of Battered Women. Grayson sent Denton a packet of materials regarding the defense, including articles, appellate decisions in cases involving the defense, and information regarding courts' positions on the defense. According to Denton, he discussed the possibility of a battered spouse defense with defendant and her family and friends as well as the prosecutor. Ultimately, he decided not to pursue a battered spouse defense and did not hire an expert.

Over the next few months, Denton and Brooks had several discussions regarding a possible guilty plea. Brooks refused to consider a plea to manslaughter and refused Denton's request for a second-degree murder plea with a sentence cap. In January 2011, Brooks offered defendant the same plea that he had previously offered, i.e., second-degree murder and felony-firearm with no sentence recommendation in exchange for dropping the open murder charge. Defendant accepted the plea and pleaded guilty on February 3, 2011. The trial court sentenced defendant to 18 to 36 years in prison for the murder conviction, to be served consecutive to 2 years' imprisonment for the felony-firearm conviction.

On September 21, 2011, defendant filed a motion to withdraw her plea, to correct her invalid sentence, and to amend the presentence investigation report. In her motion to withdraw her plea, defendant argued that Denton had rendered ineffective assistance of counsel for failing to investigate a battered spouse syndrome defense and/or hire an expert to examine defendant. Defendant asserted that her plea was therefore involuntary. She requested the appointment of a battered spouse syndrome expert at public expense as well as a *Ginther*[2] hearing.

At the *Ginther* hearing, Denton admitted that he signed the stipulation to adjourn trial in part to investigate a battered spouse syndrome defense. He obtained the packet of materials from Grayson regarding the defense, talked to defendant, and reviewed the police reports. He asserted that he originally intended to hire an expert witness regarding the defense, but ultimately determined after reviewing the case materials that the defense was not worth pursuing. One of Denton's biggest concerns was the fact that defendant reloaded her gun and continued shooting. Also, there was not much evidentiary support to show a history of physical abuse against defendant. There was only one documented incident of domestic violence. When asked whether he thought that self-defense or a battered

---

[2] *People v. Ginther*, 390 Mich. 436; 212 NW2d 922 (1973) (footnote original).

spouse defense was a viable defense, Denton responded, "I don't think it could be sold to a jury."

Denton testified that he met with defendant while she was incarcerated at least two or three times and probably wrote letters to her during the seven months that he represented her. Denton scored defendant's sentencing guidelines before the plea hearing but he did not tell defendant the sentence that she was likely to receive. Denton admitted that he told Grayson in a letter dated March 10, 2011, that defendant could receive "as little as 8 years, although [he] would expect 10 to 11 years" based on his calculation of the sentencing guidelines. Denton told defendant that her sentence would be controlled by the sentencing guidelines. Denton testified that one of his concerns was defendant's desire to be with her children. Defendant had told Denton that she wanted an opportunity to get out of prison and be with her children someday. Denton testified that considering defendant's desire to be with her children and his belief that a battered spouse defense would not be successful, he thought the second-degree murder plea was a good option because it would give defendant a chance to be released from prison one day.

Dr. Karla Fischer testified as an expert witness on domestic violence and battered spouse syndrome. She maintained that battered spouse syndrome is "not a defense per se, but the expert testimony helps to support a theory of self-defense." She opined that a battered spouse defense presented to a jury typically results in a reduction of charges, most commonly a reduction from first-degree murder to second-degree murder.

Fischer conducted a domestic violence evaluation of defendant in prison in October 2011 after defendant moved to withdraw her plea. Defendant told Fischer that Shimel had abused her physically and emotionally throughout their 30–year marriage and had threatened to kill her. Defendant claimed that Shimel had punched her, strangled her, kicked her, restrained her, and committed acts of sexual violence against her. Defendant admitting stabbing Shimel with a knife while he was choking her early in their relationship. Fischer opined that, based solely on the information that defendant provided, defendant had acted in self-defense. Fischer admitted that she did not have a "full grasp" of the forensic evidence and that a battered spouse assessment is based on a defendant's perception of events, which might not match up with other facts. Defendant told Fischer that she was having financial difficulties at the time of the shooting, but Fischer did not believe that that information was important. When asked whether it would have had any significance if defendant had a gambling problem and defendant and Shimel had conflict about it, Fischer responded:

> A. Well, my job in understanding the history of domestic violence doesn't necessarily in—that wouldn't necessarily be psychologically significant in the evaluation of domestic violence

and its effects.  So, I guess the answer would be no, it wouldn't
necessarily be important.

Q. So you wouldn't consider other motivation for the shooting?

A. I'm not really sure how to answer that question.  I mean, my job
is not to understand the motivation underlying the shooting.  My
job is to understand the history of ... domestic violence, how it
affected her and whether or not it led her to act in self-defense.

Defendant testified that she never received any phone calls or correspondence
from Denton while she was in jail.  She claimed that Denton visited her twice, the
first time for "under an hour and the second time lasted for about 10, 15 minutes."
According to defendant, Denton told her at the second meeting that he was going
to speak to Brooks and try to negotiate a plea deal with a sentence of 7 to 15 years
or less.   Defendant maintained that Denton did not explain the sentencing
guidelines to her, nor did he ask if she had any prior convictions.   Defendant
testified that the next time that she saw Denton was when she walked into the
courtroom for the plea hearing.  After defendant pleaded guilty, she wrote a letter
to Denton that stated:

> I'm writing you to—I'm writing to in regards to—to the plea
> hearing that occurred today at 1:30.  What happened?  Why was I
> not notified by you or your office or by Mr. Jacob Kolinski, your
> legal assistant who was with you today?  Why didn't I get to meet
> or speak with you before the court—before court so you could
> explain what this plea deal you had was all about?  How could you
> do this to me?  What did I just plea to?  How much time am I
> looking at?  What is the difference of Open Murder and Second
> Degree Murder?  I'm extremely confused, distraught, and frankly,
> I don't remember much about what happened today in court.

Defendant admitted that it was a priority for her to be able to be released from
prison one day so that she could be with her children.  Defendant also admitted
that she told a different story about the shooting when she first spoke to a
detective and persons at the forensic center.  She initially did not tell the detective
that she thought that Shimel was going to kill her that day.  Later, defendant
claimed that she did not tell the detective that she thought that Shimel was going
to kill her because she wanted to protect her family from the media.  Defendant
admitted that she was an avid gambler and had financial problems.   She
"possibly" bounced two checks on the day of the shooting, and she "might have
told" a friend that she could not support herself financially without Shimel.
Defendant also admitted that she talked to her daughters on the phone from jail
and tried to get them to remember the abuse that Shimel allegedly inflicted on her.
Defendant testified that her daughters "probably" told her that they did not recall

- 6 -

any abuse.  Defendant also acknowledged that her daughters testified at the preliminary examination that they did not recall any physical abuse.

Grace Ombry, defendant's best friend in high school, testified that defendant began dating Shimel after she dropped out of high school in the beginning of her senior year in 1981.  Defendant and Shimel moved into an apartment together in 1983 before they married.  Ombry visited the apartment once, during which time defendant showed Ombry bruises on her leg and claimed that Shimel had beaten her.  She also showed Ombry a gun that Shimel owned and said that Shimel had threatened her with it.  Later in 1983, shortly after defendant and Shimel married, defendant told Ombry that she was unhappy and wanted to get a divorce because Shimel was mean to her.  Ombry had not had regular contact with defendant since they were teenagers.

Brooks testified that from the beginning of the case, he believed that defendant had only two possible defenses—insanity and self-defense under a battered spouse theory. Brooks viewed defendant's videotaped statements to the police in which she admitted that she shot Shimel several times during an argument in their bedroom while three of their children were home.  No other weapons were involved to suggest that defendant was in any danger.  Brooks testified that in his early conversations with Denton, Denton mentioned that he was considering a self-defense defense under a battered spouse theory, but Brooks did not believe that the evidence supported such a defense.  Brooks maintained that the police had spoken to "dozens and dozens" of people, and Brooks did not believe that there was any substantiating proof of any serious prior violent acts between defendant and Shimel.  In fact, Brooks testified that all four of defendant's children "denied that they had ever seen any physical violence or threats of physical violence" between their parents.  Brooks told Denton that, in his view, the shooting was precipitated by the couple's financial problems, and specifically defendant's gambling problem.  Shimel was working extra jobs on the side to earn money for the family during the holidays, and funds were missing, including a recent payment for a job in the form of a check.  Brooks learned from family members and a friend that Shimel was considering leaving the home and either divorcing or separating from defendant.  According to Brooks, the physical evidence was also inconsistent with self-defense.  Shimel suffered seven gunshot wounds to his back, two of which were fatal and would have disabled Shimel very quickly.  Although the chamber of the gun held only seven bullets, Shimel suffered nine gunshot wounds.  The theory that defendant reloaded the gun and then continued to shoot was consistent with the children's description of what they had heard from downstairs.  Brooks reviewed Fischer's report and testified "with absolute certainty" that it would not have convinced him to change the plea offer or his assessment of the strengths and weaknesses of his case.  Brooks viewed Fischer's report as contradictory and self serving.

*People v. Shimel*, No. 312375, 2013 WL 4006549, at *1-4 (Mich. Ct. App. Aug. 6, 2013) (additional footnotes omitted).

The trial judge granted Petitioner's motion to withdraw the plea, finding that counsel had been deficient for only visiting Petitioner for approximately one and a half hours in jail. The judge further ruled that counsel had been ineffective for failing to investigate Petitioner's self-defense claim. *Id.,* at * 5-6. The trial judge concluded that Petitioner had established that she was prejudiced by defense counsel's deficient performance and that, but for trial counsel's deficiencies, she would not have pleaded guilty. *Id.* at * 6.

### C.

Applying a deferential "clear error" standard of review, the Michigan Court of Appeals reversed the trial court judge's decision to set aside the guilty plea and reinstated Petitioner's conviction. The Michigan Court of Appeals first concluded that the trial judge clearly erred in its factual finding that trial counsel had not adequately investigated Petitioner's case:

> In this case, the trial court found that Denton failed to fully and independently investigate a self-defense defense based on a battered spouse theory, thus satisfying the first prong of the *Strickland* test. The trial court's finding was clearly erroneous. The *Ginther* hearing testimony established that Denton is an experienced attorney, he was the elected county prosecutor for Saginaw County for four years beginning in 1972, and he had handled approximately two hundred homicide cases. Denton testified that he had spoken on several occasions with Dale Grayson at the National Clearinghouse for the Defense of Battered Women regarding the battered spouse syndrome defense and had obtained materials from Grayson regarding the defense. Denton was concerned about the fact that defendant fired several shots into Shimel's back, reloaded the gun, and continued to fire. He was also concerned that none of her four children had witnessed any physical abuse or threat of physical abuse to defendant, and there was very little evidentiary support to substantiate a history of physical abuse. Denton explained that he decided not to pursue the defense because he did not believe that "it could be sold to a jury." In fact, he testified that he believed that defendant would have been convicted of first-degree murder had she proceeded to trial. Because defendant's primary goal was to one day be released from prison in order to be with her children, Denton believed that a plea to second-degree murder was her best option. Thus, the record shows that the trial court clearly erred by

- 8 -

determining that Denton failed to conduct an investigation into a battered spouse theory of self-defense. Moreover, the trial court's findings indicate that it impermissibly substituted its judgment for that of Denton regarding matters of strategy.

*People v. Shimel*, 2013 WL 4006549, at *8.

The Michigan Court of Appeals also concluded that the trial court erred as a matter of law by failing to apply the correct prejudice standard in assessing the petitioner's ineffective assistance of counsel claim. The Court rejected Petitioner's argument that, to establish prejudice in the context of her ineffective assistance of counsel claim, she merely had to establish that but for counsel's allegedly deficient representation, she would have gone to trial. The Michigan Court of Appeals concluded that under established U.S. Supreme Court precedent, in order to establish prejudice so as to support her ineffective assistance of counsel claim, Petitioner "was required to show the defense would have been successful if she had gone to trial in that she would have received a better outcome than she received after pleading guilty." *People v. Shimel*, No. 312375, 2013 WL 4006549, at *9.

The Michigan Court of Appeals concluded that Petitioner failed to show that she would have prevailed had she rejected the plea agreement and gone to trial:

> Moreover, the record establishes that defendant would not have received a better outcome if she had gone to trial and argued that she acted in self-defense based on a battered spouse theory. Other than defendant's claims of abuse, the only testimony showing that Shimel was physically abusive toward defendant was Ombry's testimony that in 1983 defendant showed Ombry bruises on her leg and told Ombry that Shimel had threatened her with a gun. None of defendant's friends or family members corroborated defendant's claims of physical abuse, even after defendant tried to get her daughters to recall the alleged abuse when defendant talked to them on the telephone from jail. Defendant's children told the police that what they heard while downstairs in the home was consistent with defendant shooting, stopping to reload the gun, and continuing to fire. In addition, seven of the bullets entered Shimel's body through his back. Thus, the evidence simply did not support a self-defense theory. Moreover, Fischer testified that in cases involving a battered spouse defense, charges are typically reduced from first-degree murder to second-degree murder, which is exactly what

- 9 -

occurred in this case as a result of defendant's plea.  Accordingly, the record does not show that defendant would have received a better outcome had she gone to trial instead of pleading guilty. As such, defendant has failed to establish the prejudice prong of the *Strickland–Hill* test.

*People v. Shimel*, 2013 WL 4006549, at *10.

The Michigan Supreme Court denied Petitioner leave to appeal. *People v. Shimel*, 495 Mich. 916, 840 N.W.2d 312 (2013).

Petitioner now seeks a writ of habeas corpus on the following ground:

I. Deference must be given to the state trial court's ruling, following a *Strickland* evidentiary hearing, that petitioner may withdraw her guilty plea because her trial counsel was ineffective for failing to investigate a Battered Women Syndrome defense as well as inadequate communication.

Petitioner has also filed a motion to amend the memorandum in support of her habeas petition.

## II.

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), which govern this case, "circumscribe[d]" the standard of review federal courts must apply when considering applications for a writ of habeas corpus raising constitutional claims. *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003).

As amended, 28 U.S.C. § 2254(d) permits a federal court to issue the writ only if the state court decision on a federal issue "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or it amounted to "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1) & (2); *Franklin v. Francis*, 144 F. 3d 429, 433 (6th Cir. 1998).  Mere error by the state court will not justify issuance of the writ; rather, the state court's application of federal law "must have been objectively unreasonable." *Wiggins*, 539 U.S. at 520-

21.    Additionally, state court factual determinations are presumed correct. 28 U.S.C. § 2254(e)(1).

The Supreme Court has explained that, under section 2254(d), a state court decision is only "contrary to" clearly established Supreme Court precedent if it "applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or "confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent." *Williams*, 529 U.S. at 405-06.

The Supreme Court has also explained that, under 2254(d), a state court decision involves an "unreasonable application" of Supreme Court precedent when the application of the law to the facts of the prisoner's case is "objectively unreasonable." *Renico v. Lett*, 559 U.S. 766, 773 (2010). The Court has explained:

> "[A]n unreasonable application of federal law is different from an incorrect application of federal law.  Indeed, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must be objectively unreasonable.  This distinction creates a substantially higher threshold for obtaining relief than *de novo* review.  AEDPA thus imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt.

*Id.* (finding that the state court's rapid declaration of a mistrial on grounds of jury deadlock was not unreasonable even where "the jury only deliberated for four hours, its notes were arguably ambiguous, the trial judge's initial question to the foreperson was imprecise, and the judge neither asked for elaboration of the foreperson's answers nor took any other measures to confirm the foreperson's prediction that a unanimous verdict would not be reached") (internal quotation marks and citations omitted); *see also Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009) (noting that the Supreme Court has held on numerous occasions that it is not "an unreasonable

application of clearly established Federal law…for a state court to decline to apply a specific legal rule that has not been squarely established by this Court") (internal quotations omitted); *Phillips v. Bradshaw*, 607 F. 3d 199, 205 (6th Cir. 2010).

Finally, although the trial judge in this case concluded that Petitioner's trial counsel was ineffective, this Court need not defer to that resolution in favor of Petitioner. The AEDPA's standard of review is only a precondition to habeas relief, not an entitlement to it. See *Daniels v. Lafler*, 501 F.3d 735, 740 (6th Cir. 2007).

## III.

As an initial matter, Petitioner has filed a motion to amend the memorandum in support of her habeas petition.  Respondent has not opposed this motion.  The decision to grant or deny a motion to amend is within the discretion of the district court. *See* Fed. R. Civ. P. 15; *Clemmons v. Delo*, 177 F.3d 680, 686 (8th Cir. 1999).  Notice and the possibility of substantial prejudice to the opposing party are the critical factors in determining whether a motion to amend should be granted. *Coe v. Bell*, 161 F.3d 320, 341-42 (6th Cir. 1998).  Such a motion may be denied when it has been unduly delayed and when granting the motion would prejudice the nonmovant. *Smith v. Angelone*, 111 F.3d 1126, 1134 (4th Cir. 1997) (internal citations omitted).  However, delay by itself is not sufficient to deny a motion to amend. *Coe*, 161 F.3d at 342.

Petitioner's proposed amended memorandum in support of her habeas petition alleges additional support for the claims already raised in her original petition.   The amended memorandum in no way changes the petition itself.  The motion was not unduly delayed, and granting the motion will not unduly prejudice Respondent.  Accordingly, the unopposed motion to amend will be granted.

## IV.

- 12 -

Petitioner first argues that she was denied the effective assistance of trial counsel because her trial counsel failed to spend sufficient time consulting with her. Petitioner also contends that counsel was ineffective for advising her to plead guilty to a reduced charge of second-degree murder rather than investigating and pursuing a Battered Spouse Syndrome (BSS) defense.

**A.**

To show she was denied the effective assistance of counsel under federal constitutional standards, a petitioner must satisfy a two prong test. First, a petitioner must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In so doing, a petitioner must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id.* In other words, a petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689.

Second, a petitioner must show that such performance prejudiced her defense. *Id.* To demonstrate prejudice, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. The Supreme Court's holding in *Strickland* thus places the burden on a petitioner raising a claim of ineffective assistance of counsel, and not the state, to show a reasonable probability that the result of the proceeding would have been different, but for counsel's allegedly deficient performance. *See Wong v. Belmontes*, 558 U.S. 15, 27 (2009).

Furthermore, on habeas review, "the question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable - a substantially higher threshold." *Knowles v. Mirzayance*, 556

U.S. at 123 (internal quotations omitted).  "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable.  This is different from asking whether defense counsel's performance fell below *Strickland's* standard." *Harrington v. Richter*, 562 U.S. 86, 101 (2011).  Indeed, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles,* 556 U.S. at 123.

Consequently, the § 2254(d)(1) standard applies a "doubly deferential judicial review" to a *Strickland* claim brought by a habeas petitioner. *Id.*  This means that on habeas review of a state court conviction, "[A] state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Harrington*, 562 U.S. at 101.  "Surmounting *Strickland's* high bar is never an easy task." *Id.* at 105 (quoting *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)).  Because of this doubly deferential standard, "the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Harrington v. Richter*, 562 U.S. at 105.  A reviewing court must not merely give defense counsel the benefit of the doubt, but must also affirmatively entertain the range of possible reasons that counsel may have had for proceeding as he or she did. *Cullen v. Pinholster,* 131 S. Ct. 1388, 1407 (2011).  Reliance on hindsight to cast doubt on a plea that took place over four years ago is precisely what *Strickland* and AEDPA seek to prevent. *See Harrington v. Richter*, 562 U.S. at 107.

**B.**

Petitioner initially suggests that she was constructively denied the assistance of counsel because her trial lawyer only visited her in jail twice, for a total of one and a half hours. Petitioner argues that counsel's failure to visit her more frequently during the pre-trial period

amounted to a *per se* denial of the effective assistance of counsel  such that Petitioner does not need to show that the insufficient time in fact resulted in prejudice.

Where defense counsel entirely fails to subject the prosecution's case to "meaningful adversarial testing," there has been a constructive denial of counsel, and a defendant need not make a showing of prejudice to establish ineffective assistance of counsel. *Moss v. Hofbauer,* 286 F. 3d 851, 860 (6th Cir. 2002).  However, in order for a presumption of prejudice to arise based on an attorney's failure to test the prosecutor's case such that reversal is warranted without inquiring into prejudice, the attorney's failure to test the prosecutor's case must be complete. *Bell v. Cone,* 535 U.S. 685, 697 (2002).

The case of *Mitchell v. Mason*, 325 F. 3d 732 (6th Cir. 2003) upon which Petitioner relies does not support Petitioner's position that she was constructively denied the assistance of counsel.  In *Mitchell*, the Sixth Circuit interpreted the Supreme Court's holding in *Cronic* to require a presumption of prejudice against a petitioner's ineffective assistance claims. The Sixth Circuit decided in favor of the petitioner in that case based on evidence that the defense counsel only met with the petitioner for six minutes immediately before trial despite representing the petitioner for seven months, together with the fact that counsel had been suspended from the practice of law in the month prior to trial, and therefore did not appear at any motion hearings or do any other work on the case. *See Id.* at 742-44.

Petitioner's case is distinguishable from the petitioner's circumstances in *Mitchell*. Unlike in *Mitchell*, Petitioner's counsel was not suspended from the practice of law.  Petitioner does not allege that Denton failed to meet with her at all, only that Denton met with her twice in jail for a total of one and a half hours.  However, both the trial court judge and Petitioner ignored Denton's testimony from the *Ginther* hearing in which he stated that he believed he

communicated with Petitioner over the telephone and in writing, and that he believed that he visited Petitioner at least three times in jail, if not more. (Tr. 3/22/12, pp. 18-19). The evidence also shows that Denton spent time investigating Petitioner's defense and negotiating a plea bargain.

In *Mitchell*, the Sixth Circuit distinguished that case from the circumstances present in this case, observing that if the issue had been only the failure of counsel to meet with the petitioner to sufficiently prepare during a thirty-day period prior to trial, "it might have been proper to apply the *Strickland* analysis, for as *Bell* notes, counsel's failure in particular instances is evaluated under *Strickland*." *Mitchell*, 325 F. 3d at 742. "In short, *Mitchell* is a case involving unique facts-a complete failure to consult combined with counsel's suspension from the practice of law immediately prior to trial-and its holding is cabined by those unique facts." *See Willis v. Lafler,* No. 2007 WL 3121542, * 29 (E.D. Mich. October 24, 2007).

The Sixth Circuit has applied the *Strickland* standard in evaluating and rejecting an ineffective assistance of counsel claim based upon counsel's failure to consult with a habeas petitioner. *See Bowling v. Parker,* 344 F. 3d 487, 506 (6th Cir. 2003) (trial attorneys' alleged failure to consult with defendant did not prejudice defendant in capital murder case, and thus could not amount to ineffective assistance, although attorneys allegedly met with defendant for less than one hour in preparing defense, where defendant failed to show how additional consultation with his attorneys could have altered outcome of trial). Accordingly, the petitioner's ineffective assistance of counsel claim is subject to the *Strickland* standard, and she is required to show actual prejudice to obtain habeas relief.

Here, Petitioner has not shown that she was prejudiced by the amount of time her counsel spent with her. She has not met her burden under *Strickland* of showing that her case would

have been successful, but for her counsel's failure to spend more time with her. Consequently, she cannot succeed on this theory of ineffective assistance of counsel.

## C.

Petitioner's next argues that she was denied effective assistance of counsel when her trial counsel advised her to plead guilty to second-degree murder instead of raising a BSS defense. This theory of ineffective counsel is also without merit.

Plea bargaining plays a crucial role in the judicial process.  The Supreme Court has explained:

> Acknowledging guilt and accepting responsibility by an early plea respond to certain basic premises in the law and its function.  Those principles are eroded if a guilty plea is too easily set aside based on facts and circumstances not apparent to a competent attorney when actions and advice leading to the plea took place.  Plea bargains are the result of complex negotiations suffused with uncertainty, and defense attorneys must make careful strategic choices in balancing opportunities and risks.  The opportunities, of course, include pleading to a lesser charge and obtaining a lesser sentence, as compared with what might be the outcome not only at trial but also from a later plea offer if the case grows stronger and prosecutors find stiffened resolve.  A risk, in addition to the obvious one of losing the chance for a defense verdict, is that an early plea bargain might come before the prosecution finds its case is getting weaker, not stronger.

*Premo v. Moore,* 562 U.S. 115, 124-25 (2011).

The Supreme Court has warned that failure to adhere to the *Strickland* standard in reviewing plea bargains creates at least two problems. *Id*. at 125. First, hindsight review often distorts and overlooks the nuances of a negotiation process and ignores the special insights that an attorney has based on his or her experience and past dealings with a particular prosecutor or particular court. *Id*. Second, "ineffective-assistance claims that lack necessary foundation may bring instability to the very process the inquiry seeks to protect" in that the lack of assurance that reviewing courts will adhere to the strict requirements of the AEDPA and *Strickland* "could lead prosecutors to forgo plea bargains that would benefit defendants." *Id*.

In addition to showing actual prejudice, in order to satisfy the prejudice requirement for an ineffective assistance of counsel claim in the context of a guilty plea, a defendant must show that there is a reasonable probability that, but for counsel's errors, he or she would not have pleaded guilty, but would have insisted on going to trial. *Premo,* 562 U.S. at 129.  An assessment of whether a defendant would have gone to trial but for counsel's errors "will depend largely on whether the affirmative defense likely would have succeeded at trial." *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985).

The Sixth Circuit has interpreted *Hill* to require a federal habeas court to always analyze the substance of the habeas petitioner's underlying claim or defense to determine whether, but for counsel's error, petitioner would likely have gone to trial instead of pleading guilty. *See Maples v. Stegall,* 340 F. 3d 433, 440 (6th Cir. 2003).  A petitioner therefore has the burden to show a reasonable probability that but for counsel's errors, she would not have pleaded guilty, because there would have been a reasonable chance that she would have been acquitted had he or she insisted on going to trial. *See Garrison v. Elo,* 156 F. Supp. 2d 815, 829 (E.D. Mich. 2001). A habeas petitioner's conclusory allegation that, but for an alleged attorney act or omission he or she would not have pleaded guilty is insufficient to prove such a claim. *Id.*  The test of whether a defendant would not have pleaded guilty if she had received different advice from counsel is objective, and so a petitioner must demonstrate that rejecting the plea bargain would have been rational under the circumstances. *Pilla v. U.S.*, 668 F. 3d 368, 373 (6th Cir. 2012).

Finally, "[W]hen a state prisoner asks a federal court to set aside a sentence due to ineffective assistance of counsel during plea bargaining," a federal court is required to "use a doubly deferential standard of review that gives both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow*, 134 S. Ct. 10, 13 (2013).

Petitioner has failed to show that trial counsel was ineffective for advising her to plead guilty instead of presenting a BSS defense. Petitioner has also failed to show a reasonable probability that she could have prevailed had she gone to trial, or that she would have received a lesser sentence than she did by pleading guilty. *See Shanks v. Wolfenbarger,* 387 F. Supp. 2d 740, 750 (E.D. Mich. 2005).

In this case, Petitioner was originally charged with open murder under Michigan Law. Such a charge gives a circuit court jurisdiction to try a defendant on first and second degree murder charges. *See Taylor v. Withrow,* 288 F.3d 846, 849 (6th Cir. 2002). Under Michigan law, a conviction for first-degree murder requires a non-parolable life sentence, whereas a conviction of second-degree murder is parolable. *See Perkins v. LeCureux,* 58 F.3d 214, 216 (6th Cir. 1995). Petitioner's trial attorney negotiated a plea agreement whereby Petitioner was able to plead guilty to a reduced charge of second-degree murder, which eliminated the very real risk of conviction for first-degree murder at trial and spending the rest of her life in prison. Under the plea agreement, Petitioner received a sentence of eighteen to thirty six years in prison on the second-degree murder conviction.

Petitioner has not met her burden of showing her defense counsel's advice to accept that plea bargain and forego a defense of self-defense based on BSS was unreasonable or that she would have been successful with such a defense had she insisted on going to trial. Under Michigan law, BSS is not a defense in itself. *Seaman v. Washington*, 506 F. App'x 349, 360 (6th Cir. 2012). Instead, the syndrome is viewed solely as a mental condition about which an expert may testify when "'relevant and helpful to the jury in evaluating a [BSS] complainant's credibility." *Id.* BSS is therefore raised as part of a defendant's claim that she honestly and reasonably believed she was acting in self-defense.

- 19 -

Under Michigan law, one acts lawfully in self-defense if he or she honestly and reasonably believes that he or she is in danger of serious bodily harm or death, as judged by the circumstances as they appeared to the defendant at the time of the act. *Blanton v. Elo*, 186 F. 3d 712, 713, fn. 1 (6th Cir. 1999). To be lawful self-defense, the evidence must show that: (1) the defendant honestly and reasonably believed that he was in danger; (2) the danger feared was death or serious bodily harm or imminent forcible sexual penetration; (3) the action taken appeared at the time to be immediately necessary; and (4) the defendant was not the initial aggressor. *See Johnigan v. Elo,* 207 F. Supp. 2d 599, 608-09 (E.D. Mich. 2002). A defendant is not entitled to use any more force than is necessary to defend himself or herself. *Johnigan,* 207 F. Supp. 2d at 609. "[T]he law of self-defense is based on necessity, and a killing or use of potentially lethal force will be condoned only when the killing or use of potentially lethal force was the only escape from death, serious bodily harm, or imminent forcible sexual penetration under the circumstances." *Johnigan,* 207 F. Supp. 2d at 609 (internal citation omitted).

Here, Petitioner's defense counsel considered a number of factors in determining that any self-defense claim would likely be unsuccessful. First, there was very little evidence supporting Petitioner's claims of long-standing physical abuse by the victim. Petitioner's four children indicated they had never seen any instances where the victim physically abused or threated Petitioner. Additionally, Petitioner did not initially tell the police that she feared the victim was going to kill her that day.

Second, the victim suffered nine gunshot wounds, seven of which entered his body through his back. Petitioner reloaded the gun after discharging seven of the shots and then resumed firing. The fact that the victim was shot multiple times in the back undercuts any credible self-defense claim and constitutes evidence of premeditation. *See Cain v. Redman*, 947

F. 2d 817, 822 (6th Cir. 1991) *See also, e.g., Young v. Withrow,* 39 F. App'x 60, 62 (6th Cir. 2002). Additionally, the firing of multiple gunshots at the victim was sufficient to establish premeditation and deliberation, so as to support a conviction for first-degree murder. *See Crawley v. Curtis*, 151 F. Supp. 2d 878, 888-89 (E.D. Mich. 2001). The fact that Petitioner reloaded her gun before continuing to fire her weapon is also evidence of premeditation that would support a first-degree murder conviction. *Id.* Finally, there was no evidence that the victim was armed at the time of the shooting, further damaging Petitioner's self-defense claim. *See Johnigan,* 207 F. Supp. 2d at 609.

Even if a jury could have believed that Petitioner was a battered spouse, they still could have rejected her claim of self-defense under the facts of this case. *Seaman v. Washington*, 506 F. App'x at 360. Due to the limited application of BSS defenses under Michigan law and the lack of any evidence suggesting that Petitioner acted in self-defense, Petitioner has not met her burden of showing that her defense counsel was ineffective for failing to pursue a BSS defense. *Id.* In contrast, the evidence supporting a conviction for first degree murder was substantial. Under the circumstances, trial counsel's advice to plead guilty to a reduced charge of second-degree murder was a reasonable strategy. *See Bonior v. Conerly,* 416 F. App'x 475, 479 (6th Cir. 2010). Petitioner is therefore not entitled to habeas relief, and her petition will be denied.

## IV.

A habeas petitioner must receive a certificate of appealability ("COA") in order to appeal the denial of a habeas petition for relief from either a state or federal conviction.[3] 28 U.S.C. §§ 2253(c)(1)(A), (B). A court may issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a federal district

---

[3] Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254.

court rejects a habeas claim on the merits, the substantial showing threshold is met if a petitioner demonstrates that reasonable jurists could find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000).

Petitioner will be granted a certificate of appealability. The fact that the trial judge found that trial counsel was ineffective shows that reasonable jurists could decide Petitioner's claim of ineffective assistance of counsel differently. *See Robinson v. Stegall,* 157 F. Supp. 2d 802, 820, fn. 7 & 824 (E.D. Mich. 2001). Accordingly, Petitioner will be granted a certificate of appealability.

## V.

Accordingly, it is **ORDERED** that Petitioner's motion for leave to file an amended memorandum in support of her petition, ECF No. 6, is **GRANTED**.

It is further **ORDERED** that the petition for writ of habeas corpus, ECF Nos. 1 and 2, is **DENIED**.

It is further **ORDERED** that a certificate of appealability is **GRANTED.**

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: November 6, 2015

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on November 6, 2015.

s/Michael A. Sian
MICHAEL A. SIAN
